# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| WILLIE TYLER,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>BOSTON SCIENTIFIC CORPORATION,<br><br>　　　　Defendant. | Civil Action No. 1:17-cv-09170<br><br>Hon. Sara L. Ellis |

## MEMORANDUM OF LAW IN SUPPORT OF BOSTON SCIENTIFIC CORPORATION'S MOTION TO DISMISS THE COMPLAINT

Dated:　January 18, 2018

ARNOLD & PORTER KAYE SCHOLER LLP

Angela R. Vicari (admitted *pro hac vice*)
Email: angela.vicari@apks.com
250 West 55th Street
New York, NY 10019-9710
Telephone: +1 212 836 8000
Fax: +1 212 836 8689

Emily Newhouse Dillingham
Email: emily.dillingham@apks.com
70 West Madison Street
Chicago, IL 60602-4231
Telephone: +1 312 583 2435
Fax: +1 312 583 2360

Attorneys for Defendant
BOSTON SCIENTIFIC CORPORATION

64940082

**TABLE OF CONTENTS**

Page

INTRODUCTION ............................................................................................................................. 1

BACKGROUND ............................................................................................................................... 1

    A.    The Greenfield Filter ............................................................................................................ 1

    B.    Plaintiff's Allegations ........................................................................................................... 3

ARGUMENT .................................................................................................................................... 4

I.    THE COMPLAINT FAILS TO ALLEGE "PLAUSIBLE" CLAIMS ................................... 4

    A.    Plaintiff Fails to State Plausible Strict Liability Claims for Design and Manufacturing Defect ........................................................................................................... 5

    B.    Plaintiff Fails to State a Plausible Strict Liability Claim for Failure to Warn ................. 7

    C.    Plaintiff Fails to State a Plausible Negligence Claim ......................................................... 9

    D.    Plaintiff Fails to State Plausible Claims for Breach of Warranty ................................... 10

        1.    Implied Warranty ..................................................................................................... 10

        2.    Express Warranty ..................................................................................................... 11

    E.    Plaintiff Fails to Allege a Plausible Claim for Negligent Misrepresentation ................. 12

CONCLUSION ............................................................................................................................... 13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ................................................................................................1, 4, 10

*Batchelor v. Pfizer, Inc.*,
 No. 2:12-CV-908-WKW, 2013 WL 3873242 (M.D. Ala. Jul. 25, 2013) ...............................7

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007) ................................................................................................1, 4, 10

*Cardenas v. Abbott Labs.*,
 No. 11-Cv-4860, 2011 WL 4808166 (N.D. Ill. Oct. 7, 2011) ...................................................4

*Corwin v. Connecticut Valley Arms, Inc.*,
 74 F. Supp. 3d 883 (N.D. Ill. 2014) ........................................................................................4, 10

*Davis v. Boston Scientific Corporation*,
 No: 2:17-cv-682-FtM-38CM, 2018 WL 339937 (M.D. Fla. Jan. 9, 2018) ...............................5

*First Midwest Bank, N.A. v. Stewart Title Guar. Co.*,
 218 Ill. 2d 326, 843 N.E. 3d 327, 300 Ill. Dec. 69 (Ill. 2006) .................................................12

*Griffin v. Medtronic, Inc.*,
 17 CV 927, 2017 WL 4417821 (N.D. Ill. Oct. 5, 2017) ................................................. passim

*Hansen v. Baxter Healthcare Corp.*,
 309 Ill. App. 3d 869, 723 N.E.2d 302, 243 Ill. Dec. 270 (Ill. App. Ct. 1999) ..........................8

*Hasek v. DaimlerChrysler Corp.*,
 319 Ill. App. 3d 780, 745 N.E. 2d 627, 253 Ill. Dec. 504 (Ill. App. Ct. 2001) ........................11

*Heisner v. Genzyme Corp.*,
 No. 08-cv-593, 2008 WL 2940811 (N.D. Ill. July 25, 2008) .....................................................4

*Heisner v. Genzyme Corp.*,
 No. 08-Cv-593, 2010 WL 894054 (N.D. Ill. March 8, 2010) ..............................................4, 6

*In re McDonald's French Fries Litig.*,
 503 F. Supp. 2d 953 (N.D. Ill. 2007) .......................................................................................10

*Kendall v. Boston Scientific Corporation*,
 No. 6:17-cv-1888-Orl-37GJK, 2017 WL 6042020 (M.D. Fla. Dec. 6, 2017) ..........................5

64940082

*Mercado v. Bayer Healthcare Pharms. Inc.*,
    No. 14-Cv-6699, 2015 WL 3545238 (N.D. Ill. June 5, 2015)...............................................4, 6

*Mikolajczyk v. Ford Motor Co.*,
    231 Ill. 2d 516, 901 N.E. 2d 329, 327 Ill. Dec. 1 (Ill. 2008) ......................................................5

*Mills v. Bristol-Myers Squibb Co.*,
    No. CV 11-00968-PHX-FJM, 2011 WL 4708850 (D. Ariz. Oct 7, 2011) ...............................7

*Mohr v. Targeted Genetics, Inc.*,
    No. 09-Cv-3170, 2009 WL 4021153 (C.D. Ill. Nov. 18, 2009) ................................................4

*O'Brien v. Intuitive Surgical, Inc.*,
    No. 10 C 3005, 2011 WL 3040479 (N.D. Ill. July 25, 2011) ................................................4, 6

*Oggi Trattoria & Caffe, Ltd. v. Isuzu Motors Am., Inc.*,
    372 Ill. App. 3d 354, 865 N.E. 2d 334, 310 Ill. Dec. 10 (Ill. App. Ct. 2007).........................11

*Reed v. Pfizer Inc.*,
    839 F. Supp. 2d 571 (E.D.N.Y. 2012) .......................................................................................7

*Regopoulos v. Waukegan Part.*,
    240 Ill. App. 3d 668, 608 N.E. 2d 457, 181 Ill. Dec. 384 (Ill. App. Ct. 1992)........................11

*Salerno v. Innovative Surveillance Tech., Inc.*,
    402 Ill. App. 3d 490, 932 N.E. 2d 101, 342 Ill. Dec. 210 (Ill. App. Ct. 2010)................5, 7, 9

*Tillman v. Taro Pharm. Indus. Ltd.*,
    10-CV-04202, 2011 WL 3704762 (N.D. Ill. Aug. 17, 2011) ......................................... *passim*

*Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*,
    475 F.3d 824 (7th Cir. 2007) ...................................................................................................12

*Weddle v. Smith & Nephew, Inc.*,
    No. 14-Cv-09549, 2016 WL 1407634 (N.D. Ill. Apr. 11, 2016)...............................................4

*Weiland v. Palm Beach Cnty. Sherriff's Office*,
    792 F.3d 1313 (11th Cir. 2015) .................................................................................................5

**Statutes**

810 ILCS 5/2–314(2)(c)) ................................................................................................................11

**Rules**

Fed. R. Civ. P. 12(b)(6)....................................................................................................................1

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, defendant Boston Scientific Corporation ("Boston Scientific"), respectfully moves to dismiss the December 20, 2017 complaint (the "Complaint") of plaintiff Willie Tyler ("Plaintiff").

## INTRODUCTION

This is a product liability action arising out of Plaintiff's 2013 implantation with a Boston Scientific Greenfield™ Vena Cava Filter (the "Greenfield Filter"). Plaintiff asserts eight causes of action under Illinois law—strict liability (manufacturing defect, design defect and failure to warn), negligence, breach of warranty (express and implied), and negligent misrepresentation. Each of the eight claims is riddled with deficiencies and fails to satisfy pleading standards pursuant to the United States Supreme Court's decisions in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). A collection of formulaic recitations, completely void of specificity, is all that the Complaint provides. Critically absent from the Complaint are plausible allegations of any defects in the manufacture, design, or warnings of the Greenfield Filter. Accordingly, the Complaint should be dismissed with prejudice pursuant to Federal Rule 12(b)(6).

## BACKGROUND

### A. The Greenfield Filter

The inferior vena cava ("IVC") is a vein that "returns blood to the heart from the lower extremities." ¶ 22.[1] Blood clots that develop in the leg can travel from the leg through the IVC and into the lungs, causing a pulmonary embolism. *Id.* Clots that develop "in the deep leg veins" are referred to as "deep vein thrombosis" or "DVT." *Id.* "Individuals who are at risk of clotting are often treated with anticoagulants such as Heparin, Warfarin, or Lovenox to reduce the risk." ¶ 23. However, because anticoagulants are contraindicated for certain patients, doctors may

---

[1] Plaintiff's allegations are taken as true solely for purposes of this motion. References to "¶ __" are to paragraphs of the Complaint. References to "Ex.__" are to the Exhibits attached to the accompanying January 18, 2018 Declaration of Angela R. Vicari. The Complaint is attached thereto as Ex. A.

recommend implantation of an IVC filter to help prevent a pulmonary embolism. ¶ 24. An IVC filter is not a cure for DVT. Rather, it is "a medical device that is designed to prevent blood clots from traveling from the lower extremities to the heart and lungs. It is inserted into the IVC and works by trapping and filtering clots that form in the lower portions of the body." ¶ 25.

The Greenfield Filter has been on the market since the 1970s. ¶ 26. It is a *permanent* IVC filter—*i.e.*, it is not designed to be retrieved and has no retrieval option once implanted in a patient. ¶¶ 29, 31. Plaintiff does not allege whether he was implanted with a titanium or stainless steel Greenfield Filter, but the Directions for Use ("DFU") for both clearly indicate that the Greenfield Filter is "a permanently implanted [stainless steel/titanium] device designed to protect against pulmonary embolism while maintaining patency of the inferior vena cava." Ex. B at 3; Ex. C at 3. Because it is a permanent filter, its design makes it different from the retrievable filters that began to gain FDA approval in the early 2000s. ¶ 27.[2]

The Greenfield Filter's warnings are extensive. The DFU lists potential complications including, *inter alia*: "[p]erforation of the vena cava, adjacent blood vessels or organ by one or

---

[2] The Complaint references two FDA Safety Alerts issued in 2010 and 2014 and various medical journal articles regarding IVC filters. ¶¶ 40-50, 53. Boston Scientific vigorously contests Plaintiff's characterization of those alerts and articles. For example, the Amended Complaint includes the following selective and grossly misleading excerpt from the FDA's August 2014 FDA Safety Alert.

> The FDA encourages all physicians involved in the treatment and follow-up of patients receiving IVC filters to consider the risks and benefits of filter removal for each patient. A patient should be referred for IVC filter removal when the risk/benefit profile favors removal and the procedure is feasible given the patient's health status.

¶ 45. Plaintiff relies on this isolated quotation to allege that Boston Scientific "def[ied] the general instruction and recommendations of the FDA" by "continu[ing] to market [their] Greenfield Filter for long-term use." ¶ 47. But the FDA has never requested that Boston Scientific stop manufacturing the Greenfield Filter. Moreover, the paragraph in the 2014 Safety Alert that precedes the one quoted by Plaintiff makes clear that the FDA's recommendation applies to retrievable filters, and not permanent filters like the Greenfield Filter. *See* Ex. D at 1 ("The FDA recommends that implanting physicians and clinicians responsible for the ongoing care of patients with *retrievable* IVC filters consider removing the filter as soon as protection from pulmonary embolism is no longer needed.") (emphasis added). The Complaint is replete with similar distortions of fact that will be rebutted should the Complaint survive dismissal.

2

more hooks," "migration of the Filter," "[f]ormation of clots on the Filter which could result in complete blockage of blood flow through the vena cava," "pulmonary embolism," and "Death due to movement of clots to the heart or lungs." *See* Ex. B at 6; Ex. C at 6.

### B. Plaintiff's Allegations

Plaintiff alleges that on July 11, 2013, he was hospitalized for DVT and PE and implanted with a Greenfield Filter "to prevent further complications from his deep vein thrombosis and pulmonary embolism." ¶ 54. The Complaint lacks any allegation that Plaintiff's Greenfield Filter failed to protect him from PE or that it caused a post-implantation DVT.[3] Instead, Plaintiff alleges he received a "scan" on October 11, 2017 that "showed that the tip of the IVC filter was located along the posterior wall of the IVC, below the renal veins. ¶ 59. Additionally, the scan showed that all the prongs of the filter have extended beyond the wall of the IVC, which is a clear indication the filter has caused and plaintiff has suffered a perforation of the IVC from defendant's product." ¶ 59. Plaintiff also speculates that:

> As a direct and proximate result of the Greenfield Filter, Plaintiff, WILLIE TYLER, is *at risk* of suffering from serious health complications due to the long-term implant of the filter. The tilting of the *future* is complication can that *lead to future injuries*. Plaintiff's complications can be attributable to the Greenfield Filter included the increased risk of DVT despite the implanted device, constant pains in the abdominal region, the *risk of* the filter migration to the other parts of the vena cava, heart, lungs or other organs, DVT, fracture or breakage of the filter, perforation of the vena cava or other soft tissue, and other complications. [*sic*]

¶ 69 (emphasis added).

---

[3] Boston Scientific notes the Greenfield Filter is not intended to treat DVT and vigorously contests the notion, although not alleged here, that the Greenfield Filter causes post-implantation DVTs.

3

**ARGUMENT**

I.  **THE COMPLAINT FAILS TO ALLEGE "PLAUSIBLE" CLAIMS**

A complaint must provide "'fair notice' of the nature of the claim" and the "'grounds' on which the claim rests." *Twombly*, 550 U.S. at 555 n.3. Complaints that do not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" must be dismissed. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads *factual content* that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (emphasis added). Thus, a plaintiff must establish "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief." *Id.* at 679; *Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level"). Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are insufficient. *Iqbal*, 556 U.S. at 678 (citations and internal quotation marks omitted).

Pursuant to this authority, federal District Courts in Illinois routinely dismiss complaints in products liability actions that contain nothing more than speculation, conclusory statements and threadbare recitals of the elements of causes of actions.[4] In addition, three nearly identical complaints in Greenfield Filter cases filed by the same counsel that represents Plaintiff in this

---

[4] *See, e.g., Griffin v. Medtronic, Inc.*, 17 CV 927, 2017 WL 4417821 (N.D. Ill. Oct. 5, 2017); *Weddle v. Smith & Nephew, Inc.*, No. 14-Cv-09549, 2016 WL 1407634 (N.D. Ill. Apr. 11, 2016); *Mercado v. Bayer Healthcare Pharms. Inc.,* No. 14-Cv-6699, 2015 WL 3545238 (N.D. Ill. June 5, 2015); *Corwin v. Connecticut Valley Arms, Inc.*, 74 F. Supp. 3d 883 (N.D. Ill. 2014); *Cardenas v. Abbott Labs.*, No. 11-Cv-4860, 2011 WL 4808166 (N.D. Ill. Oct. 7, 2011); *Tillman v. Taro Pharm. Indus. Ltd.*, 10-CV-04202, 2011 WL 3704762 (N.D. Ill. Aug. 17, 2011); *O'Brien v. Intuitive Surgical, Inc.*, No. 10 C 3005, 2011 WL 3040479 (N.D. Ill. July 25, 2011); *Heisner v. Genzyme Corp.*, No. 08-Cv-593, 2010 WL 894054 (N.D. Ill. March 8, 2010); *Mohr v. Targeted Genetics, Inc.*, No. 09-Cv-3170, 2009 WL 4021153 (C.D. Ill. Nov. 18, 2009); *Heisner v. Genzyme Corp.*, No. 08-Cv-593, 2008 WL 2940811 (N.D. Ill. July 25, 2008).

action have been dismissed by two different federal judges. *See Kendall v. Boston Scientific Corporation*, No. 6:17-cv-1888-Orl-37GJK, 2017 WL 6042020 (M.D. Fla. Dec. 6, 2017); *Douse v. Boston Scientific Corporation*, No. 2:17-cv-599-FtM-38MRM (M.D. Fla. Dec. 18, 2017) (Ex. E); *Davis v. Boston Scientific Corporation*, No: 2:17-cv-682-FtM-38CM, 2018 WL 339937 (M.D. Fla. Jan. 9, 2018). In all three dismissal orders, the courts found the plaintiff's "shotgun" pleadings to be "impermissible." *Kendall*, 2017 WL 6042020, at *2; *Davis*, 2018 WL 339937, at *1; Ex. E at 3. *See also Davis*, 2018 WL 339937, at *1 ("Shotgun pleadings 'in one way or another, [fail] to give Defendants adequate notice of the claims against them and the grounds upon which each claim rests.'" (quoting *Weiland v. Palm Beach Cnty. Sherriff's Office*, 792 F.3d 1313, 1322 (11th Cir. 2015))). Plaintiff's claims are subject to the same fate.

    **A.    Plaintiff Fails to State Plausible Strict Liability Claims for Design and Manufacturing Defect**

To state a claim based on a defectively designed or manufactured product, a plaintiff must allege "(1) a condition of the product as a result of manufacturing or design, (2) that made the product unreasonably dangerous, (3) and that existed at the time the product left the defendant's control, and (4) an injury to the plaintiff, (5) that was proximately caused by the condition." *Mikolajczyk v. Ford Motor Co.*, 231 Ill. 2d 516, 525, 901 N.E. 2d 329, 335, 327 Ill. Dec. 1, 1 (Ill. 2008). "A manufacturing defect occurs when one unit in a product line is defective, whereas a design defect occurs when the specific unit conforms to the intended design but the intended design itself renders the product unreasonably dangerous." *Salerno v. Innovative Surveillance Tech., Inc.*, 402 Ill. App. 3d 490, 497, 932 N.E. 2d 101, 108, 342 Ill. Dec. 210, 217 (Ill. App. Ct. 2010). Threadbare allegations of a design or manufacturing defect do not suffice. For example, in *Griffin v. Medtronic, Inc.*, the court dismissed Plaintiff's "sparse" design and manufacturing defect claims because, "[o]ther than using the conclusory terms 'dangerous,' 'defective,' and 'imperfect,'

5

the complaint [was] silent as to what was wrong with the device and fail[ed] to give notice of the claim." 17 CV 927, 2017 WL 4417821, at *3 (N.D. Ill. Oct. 5, 2017).[5]

As in *Griffin*, the allegations purporting to support Plaintiff's design and manufacturing defect claims are "sparse on details." *Id*. at *3. The Complaint does not adequately allege a defect, or how a defect proximately caused Plaintiff's injury. Instead, Plaintiff declares in a conclusory manner that his Greenfield Filter "contained a condition or conditions which Defendant did not intend, at the time it left Defendant's control and possession," and that his injuries were "[a]s a result of the condition or these conditions" and the "direct and proximate result of the Greenfield Filter's manufacturing defects." ¶¶ 101, 104. He further alleges that the product was "unreasonably dangerous" and that the "unreasonable risk of serious harm" from the Greenfield Filter renders Boston Scientific "strictly liable for [his] injuries and damages sustained proximately caused by [his] use of the product." ¶¶ 87, 90-95, 98. Such legal conclusions fail to satisfy federal pleading standards. The Complaint's vague references to a "malfunction" (¶ 103) and the Greenfield Filter's "[r]ecurved hooks" (¶ 139) are unavailing because Plaintiff pleads no facts concerning the nature of the supposed malfunction, fails to allege that the recurved hooks constitute a defect, and does not allege injury as a result of the recurved hooks. *See O'Brien*, 2011 WL 3040479, at *2 (conclusory allegation of a device malfunction absent allegations "plausibly suggesting that the malfunction proximately caused the [plaintiff's] injuries" failed to state a strict liability claim).

---

[5] *See also*, *Mercado*, 2015 WL 3545238, at *2 (dismissing design and manufacturing defect claims because the "Plaintiff never so much as hints at what the defect was in the [drug] that caused [her] infection and related injuries"); *Tillman*, 2011 WL 3704762, at *4 (dismissing design defect claim because the complaint "include[d] only formulaic recitations of the elements of her cause of action"); *Heisner*, 2010 WL 894054, at *3 (dismissing strict liability claim because "it [was] unclear from the pleadings what, precisely, Plaintiff consider[ed] to be unreasonably dangerous about [the product]").

6

### B. Plaintiff Fails to State a Plausible Strict Liability Claim for Failure to Warn

To state a strict products liability claim under a failure-to-warn theory in Illinois, "a plaintiff must show 'that the manufacturer did not disclose an unreasonably dangerous condition or instruct on the proper use of the product as to which the average consumer would not be aware.'" *Griffin*, 2017 WL 4417821, at *3 (quoting *Salerno*, 402 Ill. App. 3d at 499). *Griffin* is instructive. There, plaintiff alleged that Medtronic, a medical device manufacturer, failed to warn the plaintiff or his doctors of "the risk of adverse reactions or inefficacy of the device," and failed to "instruct them on the proper use of the device." *Griffin*, 2017 WL 4417821, at *3. The Court dismissed plaintiff's warnings claim because, *inter alia*, "the complaint [did] not specifically allege what warnings were given, what [Plaintiff's] doctors knew of the device, or why the warnings were inadequate." *Id.* at *4.

As in *Griffin*, Plaintiff does not reference any of the warnings in the Greenfield Filter DFU. His omission is telling, given that the DFU warns of perforation, the very injury he claims to have sustained as a result of his Greenfield Filter. Specifically, the "**POTENTIAL ADVERSE EVENTS**" section of the DFU explicitly warns of "[p]erforation of the vena cava, adjacent blood vessels or organ by one or more hooks." Ex. B at 6; Ex. C at 6. For this reason, Plaintiff's failure to identify why the Greenfield Filter's warnings are inadequate is particularly egregious.[6] Therefore, to the extent that the failure-to-warn claim is based on the Greenfield Filter DFU, the claim must be dismissed because Plaintiff fails to identify what the DFU actually said and how it was inadequate.

---

[6] *See, e.g., Reed v. Pfizer Inc.*, 839 F. Supp. 2d 571, 576 (E.D.N.Y. 2012) (granting motion to dismiss where risk was warned of); *Batchelor v. Pfizer, Inc.*, No. 2:12-CV-908-WKW, 2013 WL 3873242, at *3, n.3 (M.D. Ala. Jul. 25, 2013) ("Plaintiff's allegation that she took [the prescription drug] and then suffered a serious harm also identified as a risk of [the prescription drug] will not alone support her failure to warn claim"); *Mills v. Bristol-Myers Squibb Co.*, No. CV 11-00968-PHX-FJM, 2011 WL 4708850, at *3 (D. Ariz. Oct 7, 2011) (dismissing failure-to-warn claim where label warned of alleged injury).

7

The failure-to-warn claim must be dismissed to the extent it is based on (i) a "product brochure" on the Boston Scientific website,[7] which he contends is "different from" the Greenfield Filter DFU and "provides limited information," and (ii) the section of Boston Scientific's website that serves as the Greenfield Filter's splash page, which he contends "fails to address the full extent of complications." ¶¶ 120-122, 126.[8] Plaintiff ignores the "**WARNINGS**," "**PRECAUTIONS**," "**POTENTIAL ADVERSE EVENTS**," and "**CONTRAINDICATIONS**" that appear in bold in the brochure. *See* Ex. F at 2. Similarly, Plaintiff fails to include in his Complaint the fact that the Greenfield Product webpage links to the product's "Indications, Safety, and Warnings," which is referred to as a "Key Resource[]" at the top of the page. *See* Ex. G at 1. Like the DFU and the product brochure, the "Indications, Safety, and Warnings" page clearly identifies "[p]erforation of the vena cava, adjacent blood vessels or organ by one or more hooks" as a potential adverse event. *See* Ex. H at 2.[9] Absent any allegations as to why the warnings in the brochure and on the webpage are inadequate, neither source can form the basis of Plaintiff's failure-to-warn claim.

In addition, Plaintiff fails to allege any connection between an alleged failure to warn on one hand and his implanting physician on the other. *See Griffin*, 2017 WL 4417821, at *3 ("In medical device cases, Illinois employs the learned intermediary doctrine, under which manufacturers have a duty to warn physicians of a 'device's dangerous propensities'" (quoting *Hansen v. Baxter Healthcare Corp.*, 309 Ill. App. 3d 869, 881, 723 N.E.2d 302, 311, 243 Ill. Dec.

---

[7] Available at http://www.bostonscientific.com/content/dam/bostonscientific/pi/portfolio-group/vena-cava-filters/greenfield/Greenfield%20VCF%20Sell%20Sheet%20(PI-25210-AC).pdf. A copy of the brochure is attached as Ex. F.

[8] Available at http://www.bostonscientific.com/en-US/products/embolic-protection/greenfield-vena-cava-filter.html. A copy of the webpage is attached as Ex. G.

[9] Available at http://www.bostonscientific.com/en-US/products/embolic-protection/greenfield-vena-cava-filter/greenfield-vena-cava-filters.html. A copy of the webpage is attached as Ex. H.

64940082

270, 279 (Ill. App. Ct. 1999))).[10] As the Court acknowledged in *Griffin*, "[t]he medical community is no doubt aware that there is some risk of injury associated with any surgical procedure, including the implantation or removal of a medical device." *Griffin*, 2017 WL 4417821, at *4. Because the plaintiff's "allegations of undisclosed warnings [were] too vague to establish that Medtronic failed to disclose anything to Griffin's doctors that they did not already know," the Court dismissed the failure-to-warn claim. *Id*. Similarly, Plaintiff does not allege that Boston Scientific failed to disclose anything to his doctors that they did not already know, and therefore her failure-to-warn claim must be dismissed.

### C. Plaintiff Fails to State a Plausible Negligence Claim

To state a negligence claim, Plaintiff "must establish the existence of a duty of care owed by the defendant, a breach of that duty, an injury proximately caused by that breach, and damages." *Salerno*, 402 Ill. App. 3d at 501. The "key distinction" between a strict liability and a negligence claim "lies in the concept of fault." *Id*. at 497. For strict liability, "the focus of the inquiry is on the condition of the product itself," whereas a negligence claim "accounts for a defendant's fault as well as the product's condition." *Id*. (internal citations omitted). The distinction does not "save [a] negligence claim from dismissal where the strict liability claim failed." *Griffin*, 2017 WL 4417821, at *4. Therefore, to the extent that the negligence claim is based on the same allegations as her strict liability claims, the negligence claim must be dismissed.

Plaintiff's negligence claim should also be dismissed to the extent it is grounded in allegations that Boston Scientific breached the duty of care by: (1) failing "to conduct adequate

---

[10] Because Boston Scientific's duty to warn runs to Plaintiff's implanting physician, the failure-to-warn claim must be dismissed to the extent that it is based on an alleged failure to warn the Plaintiff, the "public," "consumers," "healthcare providers," and the "medical community." ¶¶ 63, 66, 77, 78, 112, 114, 115, 119, 127, 129. *See Griffin*, 2017 WL 4417821, at *4 (defendant "did not owe [the plaintiff] a duty to warn him of anything"); *Tillman*, 2011 WL 3704762, at *5 (pursuant to the learned intermediary doctrine, defendant had a duty to warn the prescribing physician and not the plaintiff herself).

9

testing," (2) "failing to establish an adequate quality assurance program used in the manufacture of the Greenfield Filter," (3) "failing to establish and maintain adequate post-market surveillance program," (4) promoting the Greenfield Filter for off-label use. ¶¶ 78-79. Plaintiff alleges no factual content as to how a vaguely alleged failure to test caused his alleged injury. He omits any such factual allegations as to why Boston Scientific's quality assurance systems and post-market surveillance programs were inadequate. And the allegation of off-label promotion fails to identify any advertising or other statements by Boston Scientific that are alleged to have been off-label, much less connect such statements to Plaintiff's implantation and alleged injuries. Such threadbare recitals and conclusory declarations do not constitute "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).

### D. Plaintiff Fails to State Plausible Claims for Breach of Warranty

#### 1. Implied Warranty

To state a claim for breach of implied warranty of fitness for a particular purpose, Plaintiff must allege "(1) the seller had reason to know of the particular purpose for which the buyer required the goods; (2) the buyer relied on the seller's skill and judgment to select suitable goods; and (3) the seller knew of the buyer's reliance on its skill and judgment." *Corwin*, 74 F. Supp. 3d at 891. Moreover, "[f]or such a warranty to exist, the goods must be for a purpose other than their ordinary use." *In re McDonald's French Fries Litig.*, 503 F. Supp. 2d 953, 957 (N.D. Ill. 2007) (internal quotations omitted). Plaintiff alleges no facts plausibly suggesting that his healthcare provider implanted a Greenfield Filter for a purpose other than its ordinary use. According to Plaintiff, the filter he received was intended "for the prevention of blood clot related complications"—*i.e.*, the condition from which she allegedly suffered and for which he was allegedly treated. ¶¶ 2, 54. Plaintiff's claim for breach of an implied warranty of fitness for a

10

particular purpose therefore fails because Plaintiff has not alleged facts that plausibly suggest the existence or breach of any warranty. *Griffin*, 2017 WL 4417821, at *5 (dismissing claim for breach of an implied warranty of fitness because the complaint alleged that "the device was intended for the treatment of [plaintiff's] condition, and that is the only use he put to it").

Plaintiff's claim for breach of the implied warranty of merchantability must also be dismissed. "To state a claim for breach of the implied warranty of merchantability, a plaintiff must plead, among other things, that the goods sold were not merchantable at the time of sale (i.e. unfit for the ordinary purposes for which such goods are used)." *Griffin*, 2017 WL 4417821, at *5 (citing 810 ILCS 5/2–314(2)(c)). Plaintiff alleges that Boston Scientific "breached its implied warranty because its product were (sic) not merchantable nor reasonably suited for the ordinary purpose for which they were (sic) being used." ¶ 157. He further alleges that the Greenfield Filter was designed and manufactured "so as to result in an unreasonably high rate of injury to the organs and anatomy." ¶ 154b. Such "conclusory allegations . . . do [] not provide notice of how the device was dangerous or defective" and therefore fail to satisfy federal pleading requirements. *Griffin*, 2017 WL 4417821, at *5.

### 2. Express Warranty

In a breach of express warranty action, Plaintiff "must show a breach of an affirmation of fact or promise that was made a part of the basis of the bargain." *Oggi Trattoria & Caffe, Ltd. v. Isuzu Motors Am., Inc.*, 372 Ill. App. 3d 354, 360, 865 N.E. 2d 334, 340, 310 Ill. Dec. 10, 16 (Ill. App. Ct. 2007) (quoting *Hasek v. DaimlerChrysler Corp.*, 319 Ill. App. 3d 780, 788, 745 N.E. 2d 627, 634, 253 Ill. Dec. 504, 511 (Ill. App. Ct. 2001)). The Complaint must allege facts demonstrating that the warranty was "'an inducement to make the purchase and the purchaser actually relied upon the warranty.'" *Tillman*, 2011 WL 3704762, at *8 (quoting *Regopoulos v.*

11

*Waukegan Part.*, 240 Ill. App. 3d 668, 674, 608 N.E. 2d 457, 461, 181 Ill. Dec. 384, 388 (Ill. App. Ct. 1992)).

In support of his express warranty claim, Plaintiff cites the Boston Scientific webpage and a Greenfield Filter product brochure discussed above. He appears to contend that the company warranted that: (i) the Greenfield Filter has "Trusted Performance, Timeless Design" (¶ 135), "Proven Stability" and "Established Filter Performance" (¶ 137), (ii) its design "Promotes Clot Lysis" (¶ 137), and (iii) the Greenfield Filter is "the most trusted and most likely to protect from adverse events" (¶ 138). However, the Complaint fails to allege that either the Plaintiff or his implanting physician relied upon any of these representations. Nor does the Complaint state how these statements formed the "basis of the bargain." To the contrary, Plaintiff alleges that the brochure "might not be the same brochure given to Plaintiff at the time of his implant." ¶ 136. Absent any allegations connecting the supposed express warranties made by Boston Scientific to the Plaintiff, the express warranty claim should be dismissed.

### E. Plaintiff Fails to Allege a Plausible Claim for Negligent Misrepresentation

To plead a negligent misrepresentation claim, Plaintiff must allege: "(1) a false statement of material fact; (2) carelessness or negligence in ascertaining the truth of the statement by the party making it; (3) an intention to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; (5) damage to the party resulting from such reliance; and (6) a duty on the party making the statement to communicate accurate information." *Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 833–34 (7th Cir. 2007) (citing *First Midwest Bank, N.A. v. Stewart Title Guar. Co.*, 218 Ill. 2d 326, 332, 843 N.E. 3d 327, 334-35, 300 Ill. Dec. 69, 74 (Ill. 2006)). Here, Plaintiff fails to identify any false statements of material fact, reliance thereon or resulting damages. Dismissal is therefore warranted because Plaintiff's

12

allegations "are simply a rote recitation of the elements of a cause of action." *Tillman*, 2011 WL 3704762, at *6.

## CONCLUSION

For the reasons set forth above, Boston Scientific respectfully requests that the Amended Complaint be dismissed with prejudice.

Dated: New York, NY
        January 18, 2018

ARNOLD & PORTER KAYE SCHOLER LLP

By: /s/ Angela R. Vicari
    Angela R. Vicari (admitted *pro hac vice*)
    Email: angela.vicari@apks.com
    250 West 55th Street
    New York, NY 10019-9710
    Telephone: +1 212 836 8000
    Fax: +1 212 836 8689

    Emily Newhouse Dillingham
    Email: Emily.newhouse@apks.com
    70 West Madison Street
    Chicago, IL 60602-4231
    Telephone: +1 312 583 2435
    Fax: +1 312 583 2360

Attorneys for Defendant
BOSTON SCIENTIFIC CORPORATION

64940082