# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| WILLIE TYLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 17 C 9170 |
| v. | ) | |
| | ) | Judge Sara L. Ellis |
| BOSTON SCIENTIFIC CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

In 2013, doctors implanted a Greenfield filter, a medical device designed to prevent

blood clots manufactured by Defendant Boston Scientific Corporation ("Boston Scientific"), into

Plaintiff Willie Tyler. Several years later, he learned that the filter had caused complications,

prompting him to file this suit against Boston Scientific. Tyler brings claims for negligence

(Count I), defective design (Count II), a manufacturing defect (Count III), failure to warn (Count

IV), breach of express warranty (Count V), breach of the implied warranty of merchantability

(Count VI), breach of the implied warranty of fitness (Count VII), and negligent

misrepresentation (Count VIII). Boston Scientific has moved to dismiss the complaint. The

Court finds that, although Tyler's complaint could be more detailed, it sufficiently provides

Boston Scientific with notice of Tyler's claims for negligence, design and manufacturing defects,

breach of express warranty and the implied warranty of merchantability, and negligent

misrepresentation. However, the Court dismisses both Tyler's failure to warn claim because he

has not explained how the Greenfield filter's warnings did not adequately warn him of the

associated risks and his breach of the implied warranty of fitness claim because Tyler admits that

he used the Greenfield filter for its ordinary purpose.

**BACKGROUND**[1]

The inferior vena cava ("IVC") is a vein that returns blood to the heart from the lower

extremities. Blood clots that develop in the legs can travel through the IVC to the lungs to cause

a pulmonary embolism ("PE"). Clots that develop in the deep leg veins are referred to as deep

vein thrombosis ("DVT"). Individuals at risk of clotting are often treated with anticoagulants,

such as Heparin, Warfarin, or Lovenox. Alternatively, doctors may recommend the implantation

of an IVC filter, a medical device inserted into the IVC designed to prevent blood clots from

traveling from the legs to the heart and lungs.

Boston Scientific designs, manufactures, sells, distributes, and markets the Greenfield

filter, an IVC filter originally developed in 1973. The Greenfield filter is a permanent filter,

having no retrieval option, designed to prevent PE and DVT as well as protect from the

perforation of the vena cava wall and filter migration. In 1989, the Food and Drug

Administration ("FDA") gave Boston Scientific clearance to market the Greenfield filter under

Section 510(k) of the Medical Device Amendment, meaning the FDA or its experts did not have

to independently evaluate the product for safety or efficacy. Boston Scientific's marketing and

documentation for the Greenfield filter, including its directions for use, its product brochure, and

its website, all list potential complications from implantation of the Greenfield filter, including:

"[m]ovement or migration of the Filter," "[f]ormation of clots on the Filter which could result in

complete blockage of blood flow through the vena cava," "[i]nfection," "[f]ailure of the Filter to

---

[1] The facts in the background section are taken from Tyler's complaint and are presumed true for the
purpose of resolving Boston Scientific's motion to dismiss. *See Virnich v. Vorwald*, 664 F.3d 206, 212
(7th Cir. 2011); *Local 15, Int'l Bhd. of Elec. Workers, AFL-CIO v. Exelon Corp.*, 495 F.3d 779, 782 (7th
Cir. 2007). A court normally cannot consider extrinsic evidence without converting a motion to dismiss
into one for summary judgment. *Hecker v. Deere & Co.*, 556 F.3d 575, 582–83 (7th Cir. 2009). Where a
document is referenced in the complaint and central to the plaintiff's claims, however, the Court may
consider it in ruling on the motion to dismiss. *Id.* Here, this applies to the Greenfield filter's directions
for use, product brochure, and Boston Scientific's webpages regarding the Greenfield filter, which Tyler
references in his complaint and are central to his failure to warn claim.

attach itself securely and potential migration of the Filter to the heart or lungs," "[p]erforation of

the vena cava, adjacent blood vessels or organ by one or more hooks," and "[d]eath due to

movement of clots to the heart or lungs." Doc. 13-2 at 7; Doc. 13-3 at 7; Doc. 13-6 at 3; Doc.

13-8 at 3–4.

Because of certain concerns with the long-term complications of permanent IVC filters,

medical device manufacturers began developing and marketing temporary, retrievable filters

around 2003. The design of these newer filters allows removal once the patient no longer faces a

risk of PE or DVT.

Reports of complications with both permanent and retrievable filters surfaced in medical

publications, clinical studies, and FDA warnings. In 2007, an *American Journal of*

*Roentgenology* article reported that malfunctioning IVC filters may cause chest pains. It also

noted that, because of long-term complications associated with permanent IVC filters, retrievable

filters with lower reported complication rates had become more common. But a 2008 study

found that retrievable and permanent IVC filters had comparable complication rates and no

difference in protection rate. In August 2010, the FDA issued a warning against leaving inferior

filters—permanent or retrievable—implanted in patients for extended periods of time, noting that

doctors should remove the devices once a patient's risk for PE subsides. The FDA highlighted

the risk in not removing retrievable filters intended for short-term placement. The FDA

subsequently issued two additional alerts for IVC filters in 2010 and 2014, addressing adverse

event reports and urging removal of filters, particularly retrievable filters. And removal of

permanent filters appears to be a viable option, with an over 90% success rate in the retrieval of

permanent filters in a clinical investigation conducted between 2011 and 2015.

On July 11, 2013, after having been hospitalized for DVT and PE, Tyler received a Greenfield filter. Dr. Kevin Halstuk performed the surgery at St. Francis Hospital in Evanston, Illinois. Tyler agreed to the implantation of the Greenfield filter based on advice he received to prevent further complications from his DVT and PE. No medical professionals have suggested that Tyler have the Greenfield filter removed. On October 11, 2017, Tyler had an evaluation of his Greenfield filter. The scan revealed that the tip of the filter was located along the posterior wall of the IVC, below the renal veins, and that all the prongs of the filter extended beyond the wall of the IVC, thus causing a perforation of the IVC.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

**ANALYSIS**

**I.     Strict Liability: Design and Manufacturing Defect (Counts II and III)**

Tyler claims both that the Greenfield filter had a design defect and that his specific

Greenfield filter had a manufacturing defect as well.  Both these claims are based on different

theories of a strict products liability claim.  To state a strict products liability claim based on a

defectively designed or manufactured product, Tyler must allege "(1) a condition of the product

as a result of manufacturing or design, (2) that made the product unreasonably dangerous, (3)

and that existed at the time the product left the defendant's control, and (4) an injury to the

plaintiff, (5) that was proximately caused by the condition."  *Mikolajczyk v. Ford Motor Co.*, 901

N.E.2d 329, 345, 231 Ill. 2d 516, 327 Ill. Dec. 1 (2008).  "A manufacturing defect occurs when

one unit in a product line is defective, whereas a design defect occurs when the specific unit

conforms to the intended design but the intended design itself renders the product unreasonably

dangerous."  *Salerno v. Innovative Surveillance Tech., Inc.*, 932 N.E.2d 101, 108, 342 Ill. Dec.

210, 402 Ill. App. 3d 490 (2010).

Boston Scientific argues that Tyler's allegations are too conclusory to sufficiently allege

a design or manufacturing defect.  It extensively relies on a recent decision from this district,

*Griffin v. Medtronic, Inc.*, in which the court found that, by merely alleging that the medical

device at issue was "unreasonably dangerous, inadequate, and defective," the plaintiff failed to

give the defendant notice of his design and manufacturing defect claims.  No. 17 CV 927, 2017

WL 4417821, at *3 (N.D. Ill. Oct. 5, 2017).  But the Court does not find *Griffin* applicable here,

where the plaintiff in *Griffin* failed to respond to the defendant's motion to dismiss, forfeiting

any arguments as to why his complaint adequately stated a claim.  *Id.* (citing *Alioto v. Town of*

*Lisbon*, 651 F.3d 715, 721 & n.1 (7th Cir. 2011)).  Here, Tyler has responded to Boston

Scientific's motion to dismiss.

More importantly, though, Boston Scientific and *Griffin* demand too much from Tyler at

the pleading stage.  Boston Scientific argues that Tyler has not alleged the precise nature of the

defect in the Greenfield filter, either generally with its design or specifically with respect to the

manufacturing of his particular filter.  As the Seventh Circuit has stated, however, although

Tyler's complaint would be stronger if he specified the precise defect, he need not do so to meet

Rule 8's requirements.  *See Bausch v. Stryker Corp.*, 630 F.3d 546, 560 (7th Cir. 2010) ("Rule

9(b) does not impose any special requirement that [a strict liability claim] be pled with

particularity[.]").  Indeed, as the Seventh Circuit noted in *Bausch*, "the victim of a genuinely

defective product . . . may not be able to determine without discovery and further investigation

whether the problem is a design problem or a manufacturing problem.  It is common, for

example, for injured plaintiffs to plead both defective manufacture and design and to pursue

discovery on both theories[.]"  *Id.*  Here, Tyler sufficiently alleges the defective product, how

and when he received it, approximately when his injury occurred, and the complications that

arose from the Greenfield filter's implantation.  These allegations sufficiently serve the purpose

of Rule 8: to provide Boston Scientific with notice of Tyler's claims against it.[2]  *See id.* at 559;

---

[2] In his response, Tyler expands on his design defect claim, contending that his complaint alleges that the
Greenfield filter's failed design led other manufacturers to later design and sell retrievable filters.  Boston
Scientific replies that such a theory fails because the question is whether the product was dangerous
because it did not perform as expected "in light of its nature and intended function."  *Henry v. Panasonic
Factory Automation Co.*, 917 N.E.2d 1086, 1091, 396 Ill. App. 3d 321, 335 Ill. Dec. 22 (2009) (quoting
*Baltus v. Weaver Div. of Kidde 7 Co.*, 557 N.E.2d 580, 586, 199 Ill. App. 3d 821, 145 Ill. Dec. 810
(1990)).  It would appear that Tyler's theory of a design defect based on the existence of an alternative
retrievable filter fails under this test, where the Greenfield filter is intended to function as a permanently
implanted device.  The Court, however, does not find that this forecloses Tyler from pursuing a design
defect claim to discovery, where *Bausch* suggests that plaintiffs should have the ability to conduct
discovery to determine the source of a defect where information asymmetries exist, as they do in this
case.  The Court will expect to see from Tyler a more developed theory of both a design and
manufacturing defect after discovery.

*Tillman v. Smith & Nephew, Inc.*, No. 12 C 4977, 2013 WL 3776973, at *5 (N.D. Ill. July 18, 2013) (allegations about medical complications that occurred after implantation sufficient to allow plaintiff to proceed on product liability claims).  Therefore, the Court will allow Tyler to proceed to discovery on both his design and manufacturing defect claims.

## II.    Strict Liablity: Failure to Warn (Count IV)

Tyler also seeks to hold Boston Scientific liable for its failure to warn Tyler and his doctors of the Greenfield filter's risk of dangerous side effects, such as "the migration of the filter to the other parts of the vena cava, heart or other organs, DVT, blood clots, fracture or breakage of the filter and other complications."  Doc. 1 at ¶ 110; *see also id.* ¶ 117 (warnings did not properly warn consumers of the "perforation of the heart, lungs, other vital organs, the wall of the vena cava and tissue, cardiac or pericardial tamponade, chest pain, shortness of breath, severe recurrent pulmonary embolisms and DVT, occlusion or clogging on the IVC filter, subsequent revision surgeries, difficulty or impossibility of removal, and possibly death").  Tyler specifically complains that Boston Scientific did not include adequate warnings in the Greenfield filter's product brochure or on the warnings page of its website.  Boston Scientific, however, argues that Tyler's claim fails because he does not reference any warnings that Boston Scientific did provide in order to allow the Court and Boston Scientific to determine why such warnings were inadequate.

In order to state a failure to warn claim, Tyler must allege that Boston Scientific "did not disclose an unreasonably dangerous condition or instruct on the proper use of the product as to which the average consumer would not be aware." *Salerno*, 932 N.E.2d at 109.  "A manufacturer has a duty to warn where the product possesses dangerous propensities and there is unequal knowledge with respect to the risk of harm, and the manufacturer, possessed of such

knowledge, knows or should know that harm may occur absent a warning."[3]  *Id.* at 109–10

(quoting *Sollami v. Eaton*, 772 N.E.2d 215, 219, 201 Ill. 2d 1, 265 Ill. Dec. 177 (2002)).

Here, the Court agrees with Boston Scientific that Tyler's claim fails as alleged, where he

has not identified how the warnings Boston Scientific provided are inadequate.  Tyler

specifically contends that the product brochure and warnings page of Boston Scientific's

webpage contained insufficient warnings, but these materials list potential adverse events

associated with the Greenfield filter, including "[m]ovement or migration of the Filter,"

"[f]ormation of clots on the Filter which could result in complete blockage of blood flow through

the vena cava," "[f]ailure of the Filter to attach itself securely and potential migration of the

Filter to the heart or lungs," "[p]erforation of the vena cava, adjacent blood vessels or organ by

one or more hooks," and "[d]eath due to movement of clots to the heart or lungs."  Doc. 13-6 at

3; Doc. 13-8 at 3.  Tyler claims he suffered perforation, a risk Boston Scientific explicitly

warned may occur.  Therefore, at this stage, without further explanation as to how the warnings

Boston Scientific provided were inadequate, the Court dismisses Tyler's failure to warn claim.

## III.    Negligence (Count I)

To state a negligence claim, Tyler must allege that (1) Boston Scientific owed Tyler a

duty, (2) Boston Scientific breached that duty, and (3) Boston Scientific's breach proximately

caused Tyler injury.  *Rhodes v. Ill. Cent. Gulf R.R.*, 665 N.E.2d 1260, 1267, 172 Ill. 2d 213, 216

---

[3] Boston Scientific also argues that the learned intermediary doctrine applies, which "provides that if the [implanting] physician is adequately warned of a [device's] risks, the patient has no failure to warn claim against the [manufacturer]." *Ringelestein v. Johnson & Johnson*, No. 16 C 4970, 2017 WL 2362630, at *3 (N.D. Ill. May 31, 2017) (citing *Happel v. Wal-Mart Stores, Inc.*, 766 N.E.2d 1118, 1126, 199 Ill. 2d 179, 262 Ill. Dec. 815 (2002)).  The Court does not address the application of the learned intermediary doctrine here, where Tyler alleges that Boston Scientific directed its marketing materials at not only Tyler's doctors but also at consumers more broadly.  *See id.* (citing *In re Testosterone Replacement Therapy Prods. Liab. Litig.*, No. 14 C 1748, 2017 WL 1836443, at *8 n.2 (N.D. Ill. May 8, 2017); *Rosenstern v. Allergan, Inc.*, 987 F. Supp. 2d 795, 801 (N.D. Ill. 2013) (finding learned intermediary doctrine inapplicable where plaintiff alleged that defendant failed to warn plaintiff or her health care providers).

Ill. Dec. 703 (1996). "A product liability action asserting a claim based on negligence . . . falls within the framework of common law negligence." *Winters v. Fru-Con, Inc.*, 498 F.3d 734, 746 (7th Cir. 2007) (citation omitted). First, Boston Scientific argues that, to the extent Tyler's negligence claim is based on the same allegations as his strict liability claims, the claim fails. *See Griffin*, 2017 WL 4417821, at *4 (finding negligence claim failed where strict liability claim failed, because the added element of the defendant's fault cannot save a negligence claim from dismissal). But because the Court allows Tyler's design and manufacturing defect claims to proceed, this argument does not succeed.

Boston Scientific also argues that Tyler's allegations that Boston Scientific breached the duty of care are too conclusory and threadbare to state a claim. Tyler alleges, among other things, that Boston Scientific failed to adequately test the Greenfield filter and failed to provide adequate warnings to health care providers and consumers of the device. Tyler complains about the Greenfield filter's design and manufacture, which allegedly presented an unreasonable risk of fracture, migration, tilting, and perforation of the vena cava wall, among other things. Although the Court agrees that Tyler's laundry-list of allegations is not a model of specificity, specificity is not required at the pleading stage of a negligence claim. *See* Fed. R. Civ. P. 8(a)(2) (pleadings must contain a "short and plain statement of the claim showing that the pleader is entitled to relief"); *Twombly*, 550 U.S. at 555 (complaint does not need "detailed factual allegations" to survive a Rule 12(b)(6) motion to dismiss). Tyler need only provide Boston Scientific with notice of the claim against it. *See Bausch*, 630 F.3d at 558 ("There are no special pleading requirements for product liability claims in general . . . . The federal standard of notice pleading applies, so long as the plaintiff alleges facts sufficient to meet the new 'plausibility' standard

9

applied in *Iqbal* and *Twombly*.").  As with his design and manufacturing defect claims, he has done so here.  Therefore, the Court allows Tyler to proceed to discovery on his negligence claim.

## IV.     Breach of Express Warranty (Count V)

To state a claim for breach of express warranty, Tyler must allege that Boston Scientific made an affirmation of fact that formed part of the basis of the bargain between the parties. *Medline Indus., Inc. v. Ram Med., Inc.*, 892 F. Supp. 2d 957, 968 (N.D. Ill. 2012).  "Since express warranties are contractual in nature, the language of the warranty itself is what controls and dictates the obligations and rights of the various parties." *Oggi Trattoria & Caffe, Ltd. v. Isuzu Motors Am., Inc.*, 865 N.E.2d 334, 360, 372 Ill. App. 3d 354, 310 Ill. Dec. 10 (2007) (quoting *Hasek v. DaimlerChrysler Corp.*, 745 N.E.2d 627, 634, 319 Ill. App. 3d 780, 253 Ill. Dec. 504 (2001)).

Tyler alleges that Boston Scientific, in statements on its webpage and in its product brochures, represented that the Greenfield filter was safe, effective, and fit for implantation. Specifically, he claims Boston Scientific warranted that the Greenfield filter had "Trusted Performance, Timeless Design," Doc. 1 ¶ 135, "Proven Stability," and "Established Filter Performance," *id.* ¶ 137.  Boston Scientific also represented that the filter's design "Promotes Clot Lysis" and is "the most trusted and most likely to protect from adverse events," with its "[r]ecurved hooks . . . designed to provide protection against penetration." *Id.* ¶¶ 137–139. Boston Scientific argues that Tyler does not allege that he or his implanting physician relied on these representations, apparently ignoring explicit allegations of reliance contained in the complaint. *See id.* ¶¶ 146–147 ("Plaintiff, WILLIE TYLER, through Plaintiff's physicians and/or other healthcare providers, did rely on Defendant's express warranties regarding the safety and efficacy of Defendant's product in using the product.").  Boston Scientific also

contends that the complaint fails to allege how these representations formed the basis of the

bargain, but again, Tyler contends that had his physicians not relied on the express warranties but

instead been properly equipped with knowledge of the risks of the Greenfield filter, they would

not have recommended implantation of the Greenfield filter. *Id.* ¶ 147. Moreover, although

Tyler has included sufficient allegations to meet Boston Scientific's claimed shortcomings, he

did not need to do so to proceed on his express warranty claim under Illinois law at this stage.

This is because, in Illinois, a seller's representations create a rebuttable presumption of reliance

by the buyer. *See Felley v. Singleton*, 705 N.E.2d 930, 934, 302 Ill. App. 3d 248, 235 Ill. Dec.

747 (1999) ("[R]epresentations by the seller . . . are presumed to be affirmations of fact that

become part of the basis of the bargain [and] constitute express warranties, regardless of the

buyer's reliance on them, unless the seller shows by clear affirmative proof that the

representations did not become part of the basis of the bargain."); *In re Dial Complete Mktg. &*

*Sales Practices Litig.*, 312 F.R.D. 36, 66 (D.N.H. Dec. 8, 2015) (under Illinois express warranty

law, "a seller's representations are presumed to be part of the basis of the bargain, regardless of

the buyer's reliance, unless the seller can show otherwise by affirmative proof"). Therefore, the

Court finds Tyler sufficiently stated his breach of express warranty claim.

## V.      Breach of Implied Warranty (Counts VI and VII)

Tyler brings claims for breach of the implied warranties of merchantability and fitness.

Initially, his claim for breach of the implied warranty of fitness for a particular purpose fails.

Under Illinois law, such a claim requires that "the seller at the time of contracting has reason to

know any particular purpose for which the goods are required and the buyer is relying on the

seller's skill or judgment to select or furnish suitable goods." 810 Ill. Comp. Stat. 5/2-315. "No

warranty for a particular purpose is created if the intended use is no different from the ordinary

11

use of the product." *Rosenstern*, 987 F. Supp. 2d at 804. Tyler's claim for breach of the implied

warranty of fitness for a particular purpose is premised only on the Greenfield filter's ordinary

use—"to treat PE and DVT." Doc. 1 ¶ 163; *see also id.* ¶ 162 (acknowledging that Boston

Scientific represented to Tyler, his physicians, and healthcare providers that the Greenfield filter

"was safe and of merchantable quality and fit for the *ordinary purpose* for which the product was

intended and promoted to be used"). Tyler does not allege that the Greenfield filter was used for

any other purpose, or that Boston Scientific knew of any other particular purpose for Tyler's use

of the filter. Therefore, the Court dismisses Tyler's claim for breach of the implied warranty of

fitness for a particular purpose.

As for Tyler's claim for breach of the implied warranty of merchantability, he must plead

that (1) Boston Scientific sold him goods that were not merchantable at the time of sale, (2) he

suffered damages as a result, and (3) he gave Boston Scientific notice of the defect. *Indus. Hard

Chrome, Ltd. v. Hetran, Inc.*, 64 F. Supp. 2d 741, 748 (N.D. Ill. 1999). Goods are considered

merchantable if they are, among other things, "fit for the ordinary purposes for which such goods

are used." 810 Ill. Comp. Stat. 5/2-314. Boston Scientific argues that Tyler's allegations

concerning the implied warranty of merchantability are too conclusory and fail to provide any

notice of how the Greenfield filter was dangerous or defective. But "Illinois courts have

recognized that claims for strict liability and breach of the implied warranty of merchantability

are essentially coextensive in products liability actions." *See In re Depakote*, No. 14-CV-847-

NJR-SCW, 2015 WL 4776093, at *10 (S.D. Ill. Feb. 14, 2015) (collecting cases). Because the

Court has found that Tyler adequately alleges his strict liability design and manufacturing defect

claims, it also finds that, at this stage, his breach of the implied warranty of merchantability

claim may proceed.

## VI.   Negligent Misrepresentation (Count VIII)

To state a claim for negligent misrepresentation, Taylor must allege "(1) a false statement of material fact; (2) carelessness or negligence in ascertaining the truth of the statement by the party making it; (3) an intention to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; (5) damage to the other party resulting from such reliance; and (6) a duty on the party making the statement to communicate accurate information." *Tricontinental Indus., Ltd. v. Pricewaterhouse Coopers, LLP*, 475 F.3d 824, 833–34 (7th Cir. 2007) (quoting *First Midwest Bank, N.A. v. Stewart Title Guar. Co.*, 843 N.E.2d 327, 334–35, 218 Ill. 2d 326, 300 Ill. Dec. 69 (2006)).  Boston Scientific argues that Tyler does not identify any false statements of material fact, his reliance on those statements, or any resulting damages. Throughout his complaint, however, Tyler has included various alleged misrepresentations that Boston Scientific made regarding the fact that the Greenfield Filter had been tested and found safe and effective in treating PE and DVT.  *See, e.g.*, Doc. 1 ¶¶ 134–35, 137–39.  Similarly, Boston Scientific again apparently overlooked Tyler's allegations of reliance and damages, where Tyler clearly states that, along with his physicians and the general medical community, he relied on Boston Scientific's representations about the Greenfield filter in deciding to use it, and that that reliance ultimately caused him to sustain severe and permanent injuries.  Doc. 1 ¶¶ 173, 177.  These include a perforation of the IVC, *id.* ¶ 59, and other damages that Tyler claims resulted from "living with a defective product implanted in [his] body," *id.* ¶ 70.  As such, Tyler's allegations do not merely parrot the elements of a negligent misrepresentation claim and instead provide some factual detail to support those elements.  *Cf. Tillman v. Taro Pharm. Indus. Ltd.*, No. 10-cv-04202, 2011 WL 3704762, at *6 (N.D. Ill. Aug. 17, 2011) (dismissing negligent representation claim where allegations were "simply a rote recitation of the elements of a cause

of action"). And because Tyler only need meet Rule 8's pleading requirements for this claim, and not some heightened standard, the Court allows the claim to proceed. *Cf. Rosenstern*, 987 F. Supp. 2d at 806 (dismissing plaintiff's negligent representation claim because it sounded in fraud and thus had to meet Rule 9(b)'s heightened pleading standard).

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Boston Scientific's motion to dismiss [10]. The Court dismisses Tyler's failure to warn and breach of the implied warranty of fitness for a particular purpose claims (Counts IV and VII) without prejudice.

Dated: May 15, 2018

SARA L. ELLIS
United States District Judge